**THIERMAN BUCK, LLP**
Mark R. Thierman, Esq., Nev. Bar No. 8285
mark@thiermanbuck.com
Joshua D. Buck, Esq., Nev. Bar No. 12187
josh@thiermanbuck.com
Leah L. Jones, Esq., Nev. Bar No. 13161
leah@thiermanbuck.com
7287 Lakeside Drive
Reno, Nevada 89511
Telephone: (775) 284-1500
Fax: (775) 703-5027

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| RAYMOND SULLIVAN and JULIA CAUSEY, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>RIVIERA OPERATING CORPORATION d/b/a RIVIERA HOTEL AND CASINO and DOES 1 through 50, inclusive,<br><br>Defendant. | Case No. 2:14-cv-00165-APG-VCF<br><br>**MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |

The Parties, Plaintiffs RAYMOND SULLIVAN and JULIA CAUSEY ("Plaintiffs"), by and through their counsel, submit this Motion for Preliminary Approval of Class Action Settlement. Plaintiffs Raymond Sullivan and Julia Causey ("Plaintiffs") and Defendant Riviera Operating Corporation d/b/a Riviera Hotel & Casino ("Defendant" or "Riviera"), collectively referred to throughout this Statement as "the Parties," have reached an agreement to settle Plaintiffs' Class Action lawsuit. Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure and 29 U.S.C. § 216 *et seq.* the Parties seek this Court's preliminary approval of the Parties'

"Settlement Agreement and Release between Plaintiffs and Defendant" ("Settlement"), a copy of which is submitted for this Court's review concurrently herewith.

## I. PROCEDURAL HISTORY AND FACTUAL BACKGROUND

Plaintiffs were employed by Riviera as hourly non-exempt employees and were required to retrieve and return money from the "cashier cage" prior to the start of their shift and again at the end of their shift. In order to retrieve and return their cash bank, Plaintiffs were allegedly required to frequent a bank before clocking-in and after clocking-out of the timekeeping system. Plaintiffs allegedly were not compensated for the time they spent engaging in these banking activities.

As a result of Plaintiffs' allegations regarding Defendant's policies and procedures relating to banking activities, Plaintiffs filed this class action for unpaid wages pursuant to Nevada wage and hour laws on December 4, 2013 in the District Court, Clark County, Nevada. Defendant removed that action to this Court, January 29, 2014. (Doc. 1.)  Plaintiffs filed the operative First Amended Complaint ("FAC") on July 23, 2014.  (Doc. 30.) Plaintiffs specifically allege eight (8) causes of action against Defendant: (1) Failure to Pay Wages in Violation of the FLSA, 29 U.S.C. § 201; (2) Failure to Pay Overtime Wages in Violation of the FLSA, 29 U.S.C. § 207; (3) Failure to Pay All Hours Worked in Violation of NRS 608.140 and 608.016; (4) Failure to Pay Minimum Wages in Violation of the Nevada Constitution and NRS 608.250; (5) Failure to Pay Overtime Wages in Violation of NRS 608.140 and 608.018; (6) Failure to Pay All Wages Due and Owing in Violation of NRS 608.020-.050 and 608.140; (7) Failure to Pay the Correct Overtime Rate in Violation of the FLSA 29 U.S.C. § 207(e); and (8) Breach of Contract. *See* Doc. 30, generally.  As a result of these allegations, Plaintiffs seek to recover unpaid wages, attorney's fees, costs, and interest, for themselves and the following class of individuals: all current and former non-exempt employees who were employed by Defendant during the relevant time period and who were required to carry or use a cash bank in carrying out their employment tasks from October 1, 2011 through October 1, 2014 ("Class Members"). October 1, 2011 through October 1, 2014 shall be known as the "Class Period."

/ / /

THIERMAN BUCK, LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com; www.thiermanbuck.com

## II. SUMMARY OF THE SETTLEMENT'S KEY PROVISIONS

The Parties' Settlement provides for significant monetary recovery on behalf of the Class, releases only those claims alleged or related to the complaint, and sets forth the legally appropriate mechanism for providing notice to the Class of the terms and conditions of the Settlement.

### A. The Recovery

The Settlement provides for a maximum settlement amount of $690,000 (the "Global Settlement Fund"). Settlement ¶ II(B)(1). The following approximately breakdown applies to payments from the Maximum Settlement Amount:

- $355,000 in estimated settlement funds to the Class;
- $8,000 in settlement administration costs;
- $15,000 enhancement to each Plaintiff for their participation in the lawsuit;
- $1,000 enhancement to each Opt-In Plaintiffs;
- $230,000 attorneys' fees; and
- $15,000 costs.

Id. ¶ II(B)(4); ¶ II(B)(5) and ¶ II(B)(6). The Class Members' portion of payroll taxes will be deducted from the wage payments made to Class Members. Id. ¶ II(B)(2). The Net Settlement Fund will be paid based on a pro rata formula devised by Class Counsel based upon the number shifts each Class Member allegedly spent engaged in pre and post-shift banking. These numbers may change depending on the number of class members who submit valid claim forms or exclusion forms. Settlement ¶ II(D)(4). The Settlement provides that any amounts of the Settlement Payment not negotiated within 180 days will be returned to the Global Settlement Fund and then ultimately to Defendant. Id. ¶ II(D)(17).

This monetary amount represents a significant recovery on behalf of the Class. Plaintiffs alleged that they spent almost 30 minutes a day engaging in bank activities without compensation. Defendant rebutted Plaintiffs' contention with electronic data indicating that the time spent by most putative class members engaging in bank activities was substantially less. Defendant further argued that many putative class members may have been barred from

THIERMAN BUCK, LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com; www.thiermanbuck.com

recovering anything because the amount of time spent engaging in banking activities was "de minimus" and, thus, non compensable. Ultimately, the Parties compromised and determined that each Class Member shall be paid either his/her pro rata share of the Net Settlement Amount based on the number of shifts worked during the Class Period or an estimate of minutes allegedly spent engaged in pre and post-shift banking.

### B. The Release.

Defendant continues to deny liability under any of Plaintiffs' claims. Settlement ¶ (I)B. The Settlement provides that, in consideration for the Settlement, Class Members who do not file valid requests for exclusion will release all wage and hour claims relating or arising out of the facts of Plaintiffs' complaint against Defendant pursuant to the terms of the Settlement.[1] Id. ¶¶ II(C)(2).

### C. The Settlement Mechanism.

The Parties have agreed to use a third-party Claims Administrator to administer the claims process. Id. ¶ II(D). The Settlement provides for the Claims Administrator to send out notice explaining the terms and conditions of the Settlement to all Class Members. Id. ¶ II(D)(5) and II(D)(6). (A copy of the Notice to be approved by the Court and sent to class members is attached as Exhibit B to the Settlement.) Following mailing of the Notice, class members then have thirty (30) days submit a valid claim form to participate in the Settlement,

---

[1] Specifically, "Released Claims" means any and all claims, known and unknown, that they have or may have against Defendant related to or arising out of their employment with Defendant and/or Released Parties up to the date they execute this Agreement. This waiver and release is comprehensive and includes all claims, damages, causes of action, or disputes based upon acts or omissions occurring or which could be alleged to have occurred prior to the date and time this Agreement is executed, including but not limited to, claims based on: negligent or intentional tortious conduct; express or implied contract; covenants of fair dealing and good faith; wrongful discharge; the Family and Medical Leave Act; Title VII of the Civil Rights Act of 1964; the Civil Rights Act of 1991; Sections 1981 through 1988 of Title 42 of the United States Code; the Employee Retirement Income Security Act of 1974; the Americans with Disabilities Act of 1990; the Worker Adjustment Retraining and Notification Act; any other federal or state common law or federal, state or local laws, ordinances, or regulations; any other public policy, contract, tort or common law theory; or any statutory or common law principle allowing for the recovery of fees or other expenses, including attorneys' fees, relating to any claim or claims they are releasing in this Agreement. Id. ¶ II(C)(2).

THIERMAN BUCK, LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com; www.thiermanbuck.com

request to be excluded from the Settlement, or object to the Settlement.  Id. ¶ II(D)(5); ¶ II(D)(8).

The Settlement further provides that following the notice period the Court will hold a final "fairness" hearing to provide final review and approval of the Settlement.  Id. ¶ II(D)14. At the fairness hearing, the parties will address any issues raised by class members or the notice process itself, and the Court will have a second opportunity to review the settlement in full.

### III. THE LEGAL FRAMEWORK WEIGHTS IN FAVOR OF GRANTING PRELIMINARY APPROVAL OF THE SETTLEMENT[2]

NRCP 23(e) provides that settlement of the claims of a certified class is subject to the court's approval.  In general, settlement of class actions is favored as a matter of "strong judicial policy."  Alberto v. GMRI, Inc., 252 F.R.D. 652, 658 (E.D. Cal. 2008) (citing Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992)).  Likewise, FLSA class action claims may be settlement under the supervision of the Department of Labor or by court approval.  Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1352-53 (11th Cir. 1982).

Procedurally, the reviewing court's evaluation is conducted in two stages.  Alberto, 252 F.R.D. at 658. At the first stage, the court conditionally certifies a class for settlement purposes, preliminarily approves the settlement pending the "fairness hearing," and authorizes notice of the proposed class settlement to be given to the class. Id. (citations omitted); see also Manual for Complex Litigation (Fourth) § 21.632 (2004) ("Manual for Complex Litigation") (summarizing "preliminary fairness review").  Stage two is the fairness hearing, set for a time after notice has been provided to the class and class members have had an opportunity to submit claims or objections to the proposed settlement or to opt out of it, and the court reaches a final determination about whether the proposed settlement should be approved as a fair, adequate, and reasonable resolution of the dispute. Alberto, 252 F.R.D. at 659 (citations omitted).

---

[2] The analysis of NRCP 23 relies on federal case law.  However, as explained by the Nevada Supreme Court, interpretation of the Federal Rules of Civil Procedures, while not binding on Nevada, provides persuasive authority.  *Dougan v. Gustaveson*, 108 Nev. 517, 520-21, 835 P.2d 795, 797 (1992); *see also Shuette v. Beazer Homes Holdings, Corp.*, 121 nev. 837, 124 P.3d 530, 537-38 (2005) (analyzing NRCP 23(a) requirements in context of the "analogous" FRCP 23(a) requirements).  Likewise, by demonstrating the settlement is appropriate under NRCP 23, the Parties satisfy the analysis called for under the FLSA.  *Lewis v. Wells Fargo & Co.*, 669 F.Supp.2d 1124 (N.D. Cal., 2009); *Thiessen v. General Electric Capital Corp.*, 267 F.3d 1095 (10th Cir., 2001).

THIERMAN BUCK, LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com; www.thiermanbuck.com

"When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." <u>Lynn's Food Stores, Inc. v. United States</u>, 679 F.2d 1350, 1352-53 <u>Id</u>. at 1353 (citing <u>Schulte, Inc. v. Gangi</u>, 328 U.S. 108, 113 n.8 (1946)); <u>see also</u> <u>Copeland v. ABB, Inc.</u>, 521 F.3d 1010, 1014 (8th Cir. 2008); <u>Jimenez v. JPMorgan Chase & Co.</u>, Case No. 08cv0152 W (WMc), 2008 U.S. Dist. LEXIS 72605, *2 (S.D. Cal. Sept. 23, 2008). Under the FLSA, when reviewing the fairness of the settlement, "a court must determine whether the settlement is a fair and reasonable resolution of a bona fide dispute." <u>Jimenez</u>, 2008 U.S. Dist. LEXIS 72605 at *2; <u>Lynn's Food Stores, Inc.</u>, 679 F.2d at 1354 ("If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute; we allow the district court to approve the settlement in order to promote the policy of encouraging a settlement of litigation.").

Because this is the first stage of the Court's evaluation of the Settlement, the Parties submit that (A) the Class should be certified, (B) the Settlement should be preliminary deemed fair, reasonable, and adequate, and (C) notice should be sent out as set forth in the Settlement.

### A. The Settlement Class Should Be Certified

To facilitate the proposed settlement, the Parties respectfully request that the Court conditionally certify the following settlement Class pursuant to NRCP 23 and 29 U.S.C. § 216(b): all current and former non-exempt (hourly) employees who worked more than 40 hours in a week who, were employed by Defendant during the Class Period from October 1, 2011 through October 1, 2014 who were required carry a cash bank, and had a meal payment that was not included in their regular hourly rate. Settlement ¶ II(A)(4). As demonstrated below, all of the criteria for certifying the Class are satisfied in this case, and the parties have stipulated to conditional certification for settlement purposes. <u>See</u> Settlement attached hereto as Exhibit 1.

#### 1. All four criteria of NRCP 23(a) are met.

NRCP 23(a)(1) states that class actions are proper when "the class is so numerous that joinder of all members is impracticable. "As a general rule, classes numbering greater than

forty individuals satisfy the numerosity requirement." Quintero v. Mulberry Thai Silks, Inc., No. 08-2294, 28 I.E.R. Cas. (BNA) 607, 2008 U.S. Dist. LEXIS 84976, at *7 (N.D. Cal. Oct. 22, 2008) (citation omitted). Here, the settlement Class consists of 589 individuals. Plainly, the numerosity criterion is satisfied.

Pursuant to NRCP 23(a)(2), the Court must be satisfied that there are questions of law or fact common to the Class. The commonality requirement is construed liberally. Alberto v. GMRI, Inc., 252 F.R.D. at 660 (citation omitted); see also Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998) (Rule 23(a)(2) construed "permissively"). The class members' claims must share some substantial issues of law or fact, but need not be identical. Quintero, 2008 U.S. Dist. LEXIS 84976, at *8. Either "shared legal issues with divergent factual predicates" or "a common core of salient facts coupled with disparate legal remedies within the class" satisfies this criterion. Hanlon, 150 F.3d at 1019.

Here, all class members were non-exempt Nevada employees at one time or another during the class period from October 1, 2011 through October 1, 2014. Under Nevada law all non-exempt employees are entitled to be compensation for all hours worked, minimum wages for all hour worked, and/or overtime for all hours worked over eight (8) hours in a workday (provided that they make less than 1½ times the minimum wage rate) and over forty (40) hours in a workweek. All non-exempt employees who involuntarily leave their employment are also entitled to be paid all their wages due and owing at the time their employment ends. Given this legal foundation, Plaintiffs and Class Members' claims have common factual and legal questions, which include, whether class members were compensated for all hours they worked at the appropriate legal rate pursuant to Nevada law and whether class members who are former employees were paid all their wages due and owing at the time of their termination. See, e.g., In re Wells Fargo Home Mortgage Overtime Pay Litig., 527 F. Supp.2d 1053, 1062-63 (N.D. Cal. 2007); Wang v. Chinese Daily News, Inc., 231 F.R.D. 602,607 (C.D. Cal. 2005). Based on these common issues, this criterion is met.

NRCP 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Like commonality, the typicality standard is

applied "permissive[ly]." See Staton, 327 F.3d at 957 (quoting Hanlon, 150 F.3d at 1020). It is satisfied if the representatives' claims are "reasonably coextensive with those of absent class members; they need not be substantially identical." Id.  Here, Plaintiffs Sullivan, Causey, Sherrod, and Aguilar are former employees of Defendant that worked as non-exempt employees who allege they were required to frequent the bank, or any other money reserve location, prior to clocking in and/or after clocking out. They also allege that their meal payment was not included in the calculation of their regular rate of pay. Given these facts, Plaintiffs allege the same wage and hour violations as all other members of the class.  Thus, their claims are typical to those of the Class.

NRCP 23(a)(4) states that "the representative parties will fairly and adequately protect the interests of the class."  Courts have interpreted this requirement as posing two questions: (1) whether either the named plaintiff(s) or their counsel has any conflicts of interest with other class members, and (2) whether the named plaintiff(s) and their counsel will vigorously prosecute the action on behalf of the class. See id. (citing Hanlon and other cases).  Here, neither the Plaintiffs nor their counsel have interests antagonistic to those of other class members.  On the contrary, the Plaintiffs share with absent class members an interest in recovering compensation that Defendant denied them in unpaid wages.  In addition, Plaintiffs' counsel has extensive experience in wage and hour class actions, as well as class action litigation more generally, and the proposed settlement was reached only after arm's-length direct settlement discussions.  Declaration of Joshua D. Buck, ¶¶ 6-9.  Thus, the named-Plaintiffs and Plaintiffs' counsel are adequate representatives of the Class.

### 2. The criteria of NRCP 23(b)(3) are met.

To certify a class under NRCP 23(b)(3), a court must find that common questions of fact or law predominate over questions affecting only individual members of the proposed class, and that a class action is the superior method for fairly and efficiently adjudicating the controversy. FRCP 23(b)(3).  Both criteria are met here.

***The predominance requirement is met***.  The predominance inquiry "focuses on the relationship between the common and individual issues. When common questions present a

THIERMAN BUCK, LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com; www.thiermanbuck.com

1  significant aspect of the case and they can be resolved for all members of the class in a single
2  adjudication, there is clear justification for handling the dispute on a representative rather than
3  on an individual basis." Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las
4  Vegas Sands, Inc., 244 F.3d 1152, 1162 (9th Cir), *cert. denied,* 534 U.S. 973,122 S. Ct. 395
5  (2001) ("Local Joint Executive Bd.") (quoting Hanlon, 150 F.3d at 1022).

6       As in numerous other wage and hour class actions, the fact that this litigation arises from
7  Defendant's uniform policy (i.e., not compensating class members for banking related
8  activities) strongly supports a finding that the predominance requirement is satisfied. See, e.g.,
9  In re Wells Fargo Home Mortgage Overtime Pay Litig., 527 F. Supp.2d at 1068; In re Wells
10 Fargo Home Mortg. Overtime Pay Litigation, 571 F.3d 953, 958 (C.A.9 2009).

11      ***The superiority requirement is met.***  Determining whether a class action is the superior
12 method of adjudicating a controversy involves "comparing alternative mechanisms of dispute
13 resolution" as applied to the facts and claims. Wang v. Chinese Daily News, Inc., 231 F.R.D. at
14 614. The situation here is comparable to that of the Las Vegas Sands' former casino employees
15 who sought damages for failure to provide a statutorily required 60-day notice before closure.
16 Specifically, this case involves multiple claims, some for relatively small individual sums. Class
17 Counsel for the would-be class estimated that, under the most optimistic scenario, each class
18 members would recover about $3,146.40.  Buck Decl., ¶ 7. If Plaintiffs cannot proceed as a
19 class, some - perhaps most - will be unable to proceed as individuals because of the disparity
20 between their litigation costs and what they hope to achieve.  Local Joint Executive Bd., 244
21 F.3d at 1163 ("Class actions … may permit the plaintiffs to pool claims which would be
22 uneconomical to litigate individually.") (citing Phillips Petroleum Co. v. Shutts, 472 U.S. 797,
23 809, (1985). In such a situation, the superiority requirement is "easily satisfied." Id. The same
24 holds true here.

25      **B.**    **The Proposed Settlement Is Fair, Reasonable, and Adequate**

26      The Manual for Complex Litigation § 21.62 identifies several factors that courts may
27 weigh in determining whether a settlement is fair, reasonable, and adequate.  Fairness calls for a
28 comparative analysis of the treatment of class members vis-a-vis each other and vis-a-vis

**THIERMAN BUCK, LLP**
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com; www.thiermanbuck.com

similar individuals with similar claims who are not in the class. Reasonableness depends on an analysis of the class allegations and claims and the responsiveness of the settlement to those claims. Adequacy of the settlement involves a comparison of the relief granted relative to what class members might have obtained without using the class action process. Id., § 21.62 at 315.

At the preliminary approval stage, courts do not make a final determination of fairness, reasonableness, and adequacy. Instead, the key question at this point is only whether the settlement is "potentially fair, as the Court will make a final determination of [the settlement's] adequacy at the hearing on Final Approval, after such time as any party has had a chance to object and/or opt out." Acosta v. Equifax Info. Servs. LLC, 243 F.R.D. 377,386 (C.D. Cal. 2007). Thus, the inquiry should focus on whether the proposed settlement falls within the "range of possible approval" and appears to be sufficiently fair, reasonable, and adequate to warrant distributing notice to class members informing them about the proposed settlement and their options for responding and participating. Molski v. Gleich, 318 F.3d 937,944 (9th Cir. 2003); see also Manual for Complex Litigation § 21.632. "Once the judge is satisfied as to the ... results of the initial inquiry into the [1] fairness, [2] reasonableness and [3] adequacy of the settlement," the court should direct notice to issue and schedule a final approval hearing. Id., § 21.633 at 321. Here, all three are preliminarily met.

### 1. The Settlement is Fair.

**Fairness of distribution among class members.** The proposed settlement is fair in that class members' benefits are determined by the number of shifts they worked during the class period. Furthermore, the proposed settlement would release only participating class members' wage and hour claims, not all potential employment claims, in exchange for the financial benefits they receive.

**Fairness of proposed attorneys' fees.** The allocation of total settlement funds between class members and the attorneys is also fair, in that the settlement agreement provides for Plaintiffs' counsel to seek no more than approximately 33% of the Global Settlement Fund in fees.

The requested fees are fair compensation for undertaking complex, risky, expensive, and time-consuming litigation solely on a contingency basis. Further, the requests are in line with other attorneys' fees awards for wage and hour class actions, particularly where a significant portion of the class members will be receiving substantial claim payment amounts of several hundred dollars.

Indeed, courts have recognized that an appropriate method for awarding attorneys' fees in class action is to award a percentage of the "common fund" created as a result of the settlement. Vincent v. Hughes Air West, Inc., 557 F.2d 759, 769 (9th Cir. 1977). The purpose of the common fund/percentage approach is to "spread litigation costs proportionally among all the beneficiaries so that the active beneficiary does not bear the entire burden alone." Id.

Moreover, several courts have expressed frustration with the alternative "lodestar" approach for deciding fee awards, which usually involves wading through voluminous and often indecipherable time records. Commenting on the loadstar approach, Chief Judge Marilyn Hall Patel wrote in In re Activision Securities Litigation, 723 F.Supp. 1373, 1375 (N.D. Cal. 1989):

> This court is compelled to ask, "Is this process necessary?" Under a cost-benefit analysis, the answer would be a resounding, "No!" Not only does the Lindy Kerr-Johnson analysis consume an undue amount of court time with little resulting advantage to anyone, but in fact, it may be in the detriment of the class members. They are forced to wait until the court has done a thorough, conscientious analysis of the attorneys' fees petition. Or, class members may suffer a further diminution of their fund when a special master is retained and paid from the fund. Most important, however, is the effect the process has on the litigation and the timing of settlement. Where attorneys must depend on a lodestar approach, there is little incentive to arrive at an early settlement.

Indeed, the percentage approach is preferable to the lodestar because: (1) it aligns the interests of class counsel and absent class members; (2) it encourages efficient resolution of the litigation by providing an incentive for early, yet reasonable, settlement; and (3) it reduces the demands on judicial resources. In re Activision Securities Litigation, 723 F. Supp. at 1378-79. Courts now routinely uses the percentage of the common fund approach to determine the award of attorneys' fees. (See, e.g., In re Pacific Enterprises Securities Litigation, 47 F.3d 373, 378-79 (9th Cir. 1994) (approving attorneys' fees of 33 1/3% of settlement fund).

Class counsels' application for 33% of the Global Settlement Fund is within the range of reasonableness. Historically, courts have awarded percentage fees in the range of 20% to 50% of the common fund, depending on the circumstances of the case. Newberg on Class Action § 14:6 (4th ed. 2008); see also In re Activision Securities Litigation, 723 F.Supp. 1373, 1378 (N.D. Cal. 1989). According to Newberg: "No general rule can be articulated on what is a reasonable percentage of a common fund. Usually 50% of the fund is the upper limit on a reasonable fee award from a common fund in order to assure that the fees do not consume a disproportionate part of the recovery obtained for the class, although somewhat larger percentages are not unprecedented." Newberg, § 14:6. Accordingly, the attorneys fees sought in this case are fair and reasonable.

**Fairness of proposed "enhancement" award for the named Plaintiff**. The principle of fairness is also well served by the $15,000 enhancement payment proposed for the named Plaintiffs and $1,000 enhancement payment proposed for the Opt-In Plaintiffs. Plaintiffs provided invaluable assistance to Plaintiffs' counsel in explaining Defendant's compensation policies and procedures, the manner in which individuals who have to carry cash perform their duties, and in providing information to assist in the settlement negotiations. Further, Plaintiffs incurred personal risk in bringing this lawsuit on behalf of the other persons in the class. See, e.g., Koehl v. Verio, 142 Cal. App. 4th 1313, 1328 (2006) (in wage and hour action where defendant prevailed at trial, named plaintiffs were held liable, jointly and severally, for defendant's attorneys' fees). Plaintiffs could have been held liable for Defendant's costs if they were ultimately unsuccessful in resolving the case and their potential employment opportunities could (and can still be) impacted because of their public participation in this lawsuit.

Such service payments are recognized as serving an important function in promoting class action settlements. In League of Martin v. City of Milwaukee, 588 F. Supp. 1004 (E.D. Wis. 1984), the court held that the proposed settlement properly granted the named plaintiff additional relief, explaining that it is "not uncommon for class ... members to receive special treatment in settlement" when they have been instrumental in prosecuting the lawsuit. Id. at 1024. Accordingly, the enhancement is fair.

THIERMAN BUCK, LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com; www.thiermanbuck.com

### 2.     The Settlement Is Reasonable.

At $690,000 overall, the proposed settlement is clearly substantial. This is not a settlement where the aggregate figure is large simply because the size of the class is in the tens or hundreds of thousands. Instead, here the class size is relatively small but class members are eligible for significant financial benefit. These considerations indicate that the proposed settlement falls within the range of reasonableness, warranting preliminary approval.

This conclusion is reinforced by considering such factors as the risk that a class might not be certified or might be significantly smaller than proposed; and the time, expense, and complexity of the litigation, including the possibility of appellate proceedings. Furthermore, while Class Counsel believe that Plaintiffs' claims are meritorious, they are experienced class action litigators, and understand that the outcome of class certification, trial, and any attendant appeals were inherently uncertain, as well as likely to consume many more months, even years. Having reviewed relevant compensation data and employment information, counsel for the parties—all experienced class action litigators well versed in wage and hour law—arrived at a reasonable resolution through a protracted and arm's-length direct negotiation process, which continued into all details of the settlement agreement and ancillary documents.

Another factor considered in approving a settlement is the complexity, expense, and likely duration of the litigation. <u>Offices for Justice</u>, 688 F.2d at 625. The Court must weigh the benefits of the proposed settlement against the expense and delay involved in achieving an equivalent or more favorable result at trial. <u>See, e.g.</u>, <u>Young v. Katz</u>, 447 F .2d 431,433-34 (5th Cir. 1971). The policy that favors settlement of class actions and other complex cases applies with particular force here. Employment cases, and specifically wage and hour cases, are expensive and time-consuming. That this is a class action further amplifies the economies of time, effort, and expense achieved by the settlement. Inevitably, the certification process alone would add time and expense to the litigation process. The settlement, on the other hand, provides to all class members substantial relief, promptly and efficiently. The settlement in this case is therefore consistent with the "overriding public interest in settling and quieting litigation" that is "particularly true in class action suits." <u>See Van Bronkhorst v. Safeco Corp.</u>,

THIERMAN BUCK, LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com; www.thiermanbuck.com

529 F.2d 943, 950 (9th Cir. 1976) (footnote omitted); see also 4 Newberg on Class Actions § 11.41 (citing cases).

In sum, the resulting settlement is, in light of all applicable factors, reasonable, and warrants notification of its terms to members of the potential class for their consideration and response.

### 3. The Settlement Is Adequate.

As previously mentioned, in a somewhat similar a class action the court aptly observed that it would have been irrational for most, and probably all, class members to pursue their claims on an individual basis "because of the disparity between their litigation costs and what they hope to recover." Local Joint Executive Bd., 244 F.3d at 1163.

The recovery provided through the settlement is substantial, especially as its adequacy must be judged as "a yielding of absolutes and an abandoning of highest hopes.... Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation .... "Officers for Justice, 688 F.2d at 634 (citation omitted). Accordingly, the settlement is not to be judged against a speculative measure of what might have been achieved. Linney v. Cellular Alaska P'ship, 151 F .3d 1234, 1242 (9th Cir. 1998). An additional consideration is that the settlement provides for payment to the class now, rather than a payment many years down the road, if ever. See City of Detroit v. Grinnell Corp., 495 F .2d 448, 463 (2d Cir. 1974).

Thus, considering the present value of the settlement sum, the probability of lengthy litigation in the absence of a settlement, and the risks that the class might not have prevailed at trial, it is no exaggeration to predict that without using the class action process, the relief that members of the class were likely to achieve ranged from negligible to zero. Consequently, the $690,000 settlement satisfies the criterion of adequacy. See Manual for Complex Litigation § 21.62 ("Adequacy of the settlement involves a comparison of the relief granted relative to what class members might have obtained without using the class action process.").

C.   The Notice Adequately Informs Class Members Of The Settlement.

The Notice explains the process (Ex. B, generally); how to participate in (submit a valid claim form – Ex B, § (4)(A)), request to be excluded for or object to the Settlement (Ex. B, § (4)(B)); and the consequences of the action the class member takes (submitting a claim form, doing nothing, opting out, or objecting), in terms of both financial benefit and release of claims (Ex. B § 4). The notice advises class members about the final approval hearing, their rights with respect to that hearing, and how to get more information. (Ex. B, § 6.)  Likewise, the exclusion form is simple and straightforward. (Ex. D, generally.) The 30-day time frame for submitting a valid claim form or requesting exclusion is reasonable, allowing class members to digest the information in the notice and obtain answers to questions before deciding on the action they want to take.  Accordingly, in addition to approving the Settlement agreement as a whole, Plaintiffs respectfully ask that the Court approve the Notice and other ancillary forms in substantially the format presented with the Settlement.

### IV.  CONCLUSION.

Based on the information and reasons provided above, the Parties respectfully request that the Court enter the proposed order granting preliminary approval of the class action settlement that is attached to the Settlement as Exhibit E.

Dated: October 26, 2015.

**THIERMAN BUCK, LLP**

*/s/Joshua D. Buck*
Mark R. Thierman, Esq., Nev. Bar No. 8285
Joshua D. Buck, Esq., Nev. Bar No. 12187
Leah L. Jones, Esq. Nev. Bar No. 13161
7287 Lakeside Drive
Reno, Nevada 89511
*Attorneys for Plaintiffs*

**THIERMAN BUCK, LLP**
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com; www.thiermanbuck.com