**THIERMAN BUCK, LLP**
Mark R. Thierman, Esq., Nev. Bar No. 8285
mark@thiermanbuck.com
Joshua D. Buck, Esq., Nev. Bar No. 12187
josh@thiermanbuck.com
Leah L. Jones, Esq., Nev. Bar No. 13161
leah@thiermanbuck.com
7287 Lakeside Drive
Reno, Nevada  89511
Telephone: (775) 284-1500
Fax: (775) 703-5027

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| RAYMOND SULLIVAN and JULIA CAUSEY, on behalf of themselves and all others similarly situated,<br><br>            Plaintiffs,<br><br>vs.<br><br>RIVIERA OPERATING CORPORATION d/b/a RIVIERA HOTEL AND CASINO and DOES 1 through 50, inclusive,<br><br>            Defendant. | Case No.:  2:14-cv-00165-APG-VCF<br><br>**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF COLLECTIVE AND CLASS ACTION SETTLEMENT** |

Plaintiffs RAYMOND SULLIVAN and JULIA CAUSEY ("Plaintiffs"), by and through their counsel, Thierman Buck, LLP hereby move the Court for an Order granting final approval of the class and collective action settlement in this matter.  The Court preliminary approved the settlement on October 30, 2015. (Doc. 111.)  This Motion is made pursuant to Rule 23(e) of the Federal Rules of Civil Procedure and the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-16. The Motion is based on following memorandum of points and authorities, the Settlement Agreement (previously filed as Doc. 110-1), the accompanying declarations,

THIERMAN LAW FIRM, PC
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net

1  exhibits, and proposed order, all other papers on file in this action, and such other evidence or

2  arguments the Court may receive before deciding this Motion.

3

4  Dated: January 5, 2016                           THIERMAN BUCK, LLP

5

6                                                   By: */s/ Joshua D. Buck*_____
                                                       Mark R. Thierman
7                                                      Joshua D. Buck
                                                       Leah L. Jones
8

9                                                      *Attorneys for Plaintiffs*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

THIERMAN LAW FIRM, PC
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net

PLAINTIFFS' MOTION ISO FINAL APPROVAL OF COLLECTIVE AND CLASS ACTION SETTLEMENT

THERMAN LAW FIRM, PC
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.   INTRODUCTION**

Plaintiffs, on behalf of themselves and others similarly situated, seek final approval of this class and collective action settlement.  See Settlement Agreement, previously filed as Doc. 110-1, hereinafter, "Settlement," "Agreement," or "Settlement Agreement.")[1]   This Motion follows a successful administration of the Settlement authorized by the Court's Order Granting Preliminary Approval of Class and Collective Action Settlement on October 30, 2015.  See Doc. 111.

Subject to Court approval, Plaintiffs have settled their claims and those of Class Members for a maximum Settlement Amount of $690,000 on a claims made basis.  See Settlement ¶ II(D)(4).   The final class lists consisted of 180 Class Members.  See Declaration of Jackie Hitomi, CPT Claims Administrator Director of Settlement and Treasury Services, hereinafter "Hitomi Dec." at ¶ 5.   Of the 180 Class Members, nine Notice packets were undeliverable.  Id. at ¶ 10.   No Class Members have requested exclusion. Id. at ¶ 11. The Claims Administrator (hereinafter, "CPT"), received eighty-one claims, or 45% of the Class is participating in this settlement.  Id. at ¶ 14. In Class Counsel's experience, this is a significantly positive response.  See Declaration of Joshua D. Buck, hereinafter "Buck Dec." at ¶ 11. Furthermore, no objections have been filed with CPT, Class Counsel, or the Court.  See Hitomi Dec. at ¶¶ 12-13; Buck Dec. at ¶ 11.

The proposed Settlement satisfies all of the criteria for final settlement approval under federal law because it is fair, adequate, and reasonable. See *Churchill Village, L.L.C. v. GE,* 361 F.3d 566, 575-76 (9th Cir. 2004).   The positive response of the Class Members to the Settlement—including *no* requests for exclusion and *no* objectors—provides strong support that the final settlement approval is appropriate. See *Stoetzener v. U.S. Steel Corp.,* 897 F.2d 115, 118-19 (3rd Cir. 1990) (finding that objections of 29 members out of a settlement class of 281— "strongly favors settlement"); *Boyd v. Bechtel Corp.,* 485 F. Supp. 610, 624 (N.D. Cal. 1979)

---

[1] For purposes of consistency, and unless otherwise noted, all terms herein shall have the same meaning and definition as in the Parties' Settlement Agreement.

(finding that objections from only 16 percent of a class was "persuasive" that a settlement was adequate).  Because the Settlement provides a substantial benefit to the Parties, and the Class Members, Plaintiffs request that the Court approve the Parties' Settlement as fair, adequate, and reasonable, and enter judgment accordingly.

## II.     FACTUAL BACKGROUND

### A.     Plaintiffs' Lawsuit

Plaintiffs were employed by Riviera as hourly non-exempt employees and were required to retrieve and return money from the "cashier cage" prior to the start of their shift and again at the end of their shift.  In order to retrieve and return their cash bank, Plaintiffs were allegedly required to frequent a bank before clocking-in and after clocking-out of the timekeeping system.  Plaintiffs allegedly were not compensated for the time they spent engaging in these banking activities.

As a result of Plaintiffs' allegations regarding Defendant's policies and procedures relating to banking activities, Plaintiffs filed this class action for unpaid wages pursuant to Nevada wage and hour laws on December 4, 2013.  See Doc. 1, Complaint.  Plaintiffs filed the operative First Amended Complaint ("FAC") on July 23, 2014.  See Doc. 30. Plaintiffs specifically allege eight (8) causes of action against Defendant: (1) Failure to Pay Wages in Violation of the FLSA, 29 U.S.C. § 201; (2) Failure to Pay Overtime Wages in Violation of the FLSA, 29 U.S.C. § 207; (3) Failure to Pay All Hours Worked in Violation of NRS 608.140 and 608.016; (4) Failure to Pay Minimum Wages in Violation of the Nevada Constitution and NRS 608.250; (5) Failure to Pay Overtime Wages in Violation of NRS 608.140 and 608.018; (6) Failure to Pay All Wages Due and Owing in Violation of NRS 608.020-.050 and 608.140; (7) Failure to Pay the Correct Overtime Rate in Violation of the FLSA 29 U.S.C. § 207(e); and (8) Breach of Contract.  See generally FAC.   As a result of these allegations, Plaintiffs seek to recover unpaid wages, attorney's fees, costs, and interest, for themselves and the following class of individuals: all current and former non-exempt employees who were employed by Defendant during the relevant time period and who were required to carry or use a cash bank in carrying

THERMAN LAW FIRM, PC
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net

THERMAN LAW FIRM, PC
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net

out their employment tasks from October 1, 2011 through October 1, 2014 ("Class Members"). October 1, 2011 through October 1, 2014 shall be known as the "Class Period."

**B.      Negotiations and Settlement**

Upon receipt of Plaintiffs' Complaint, the Parties conducted significant investigation of the facts and law. Such discovery and investigation have included, inter alia, the review and exchange of information in the form of disclosures (personnel documents, pay and time records, time clock data, Defendant's Employee Handbook, the Culinary Union bargaining agreement, and cage receipts), Plaintiffs' Interrogatories and Requests for Production, Defendant's Interrogatories to opt-in plaintiffs, multiple email exchanges, meet and confers regarding discovery and Plaintiffs' §216(b) Notice, client meetings, interviews, and gathering of declarations.  During this process, Defendant entered into an agreement to sell the Riviera to the Las Vegas Convention and Visitors Authority with plans to shutter and demolish the building.  The Parties then engaged in settlement negotiations over several months. See "Buck Dec." at ¶¶ 7-8.  Through this direct communication, the Parties were able to assess the relative strengths and weaknesses of each Parties' position, weigh the inherent risks and expenses of continued litigation, and agree upon the proper parameters of evaluating the potential damages resulting from Plaintiffs' allegations. Id. at ¶ 9. The discussions resulted in the settlement that has previously been submitted to the Court. See Doc. 110-1.

**III.    SUMMARY OF THE SETTLEMENT'S KEY PROVISIONS.**

The Parties' Settlement provides for significant monetary recovery on behalf of the Class, releases those claims alleged or related to the complaint, and sets forth the legally appropriate mechanism for providing notice to the Class of the terms and conditions of the Settlement.

**A.      The Recovery.**

The Settlement provides for a maximum settlement amount of $690,000 (the "Global Settlement Fund").  Settlement ¶ II(B)(1).  The following approximately breakdown applies to payments from the Maximum Settlement Amount:

PLAINTIFFS' MOTION ISO FINAL APPROVAL OF COLLECTIVE AND CLASS ACTION SETTLEMENT

- $355,000 in estimated settlement funds to the Class[2];

- $11,500 in settlement administration costs;

- $15,000 enhancement to each Plaintiff for their participation in the lawsuit;

- $1,000 enhancement to each Opt-In Plaintiff;

- $230,000 attorneys' fees; and

- $15,000 costs.

Id. ¶ II(B)(4); ¶ II(B)(5) and ¶ II(B)(6).  The Class Members' portion of payroll taxes will be deducted from the wage payments made to Class Members.  Id. ¶ II(B)(2).  Settlement awards for participating Class Members will be paid out of the Net Settlement Fund based on the number of shifts worked.  See Hitomi Dec. at ¶ 2(g); Settlement ¶ II(D)(4).  The Settlement provides that any amounts of the Settlement Payment not negotiated within 180 days will be returned to the Global Settlement Fund and then ultimately to Defendant.  See Settlement at ¶ II(D)(17).

This monetary amount represents a significant recovery on behalf of the Class. Plaintiffs alleged that they spent almost 30 minutes a day engaging in bank activities without compensation.  Defendant rebutted Plaintiffs' contention with electronic data indicating that the time spent by most putative class members engaging in bank activities was substantially less. Defendant further argued that many putative class members may have been barred from recovering anything because the amount of time spent engaging in banking activities was "de minimus" and, thus, non compensable.  Ultimately, the Parties compromised and determined that each Class Member shall be paid either his/her pro rata share of the Net Settlement Amount based on the number of shifts worked during the Class Period or an estimate of minutes allegedly spent engaged in pre and post-shift banking.

### B.    The Release.

Defendant continues to deny liability under any of Plaintiffs' claims.  See Settlement ¶ (I)B.  The Settlement provides that, in consideration for the Settlement, Class Members who do not file valid requests for exclusion will release all wage and hour claims relating or arising out

---

[2] This amount shall be referred to herein as the "Net Settlement Amount."

THIERMAN LAW FIRM, PC
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net

THERMAN LAW FIRM, PC
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net

1   of the facts of Plaintiffs' complaint against Defendant pursuant to the terms of the Settlement.[3]

2   Id. ¶¶ II(C)(2).

3       C.      **The Settlement Mechanism.**

4       The Parties have agreed to use a third-party Claims Administrator to administer the

5   claims process.  Id. ¶ II(D). The Settlement provides for the Claims Administrator to send out

6   notice explaining the terms and conditions of the Settlement to all Class Members.      Id. ¶

7   II(D)(5) and II(D)(6).  (A copy of the Notice approved by the Court and sent to class members

8   is attached as Exhibit B to the Settlement.)  Following mailing of the Notice, class members had

9   thirty (30) days to submit a valid claim form in order to participate in the Settlement, request to

10  be excluded from the Settlement, or object to the Settlement.  Id. ¶ II(D)(5); ¶ II(D)(8).

11      The Settlement further provided that following the notice period the Court will hold a

12  final "fairness" hearing to provide final review and approval of the Settlement.  Id. ¶ II(D)14.

13  At the fairness hearing the Court will have a second opportunity to review the settlement in full.

**IV.   THE COURT-APPROVED NOTICE PROCESS**

15      A.      **Preliminary Approval**

16      On October 30, 2015, the Court granted preliminary approval of the Settlement.   See

17  Doc. 111.  In doing so, the Court authorized the sending of notice, claim forms, and exclusion

---

19          [3]      Specifically, "Released Claims" means any and all claims, known and unknown,
20  that they have or may have against Defendant related to or arising out of their employment with
    Defendant and/or Released Parties up to the date they execute this Agreement.  This waiver and
21  release is comprehensive and includes all claims, damages, causes of action, or disputes based
22  upon acts or omissions occurring or which could be alleged to have occurred prior to the date
    and time this Agreement is executed, including but not limited to, claims based on: negligent or
23  intentional tortious conduct; express or implied contract; covenants of fair dealing and good
    faith; wrongful discharge; the Family and Medical Leave Act; Title VII of the Civil Rights Act
24  of 1964; the Civil Rights Act of 1991; Sections 1981 through 1988 of Title 42 of the United
    States Code; the Employee Retirement Income Security Act of 1974; the Americans with
25  Disabilities Act of 1990; the Worker Adjustment Retraining and Notification Act; any other
26  federal or state common law or federal, state or local laws, ordinances, or regulations; any other
    public policy, contract, tort or common law theory; or any statutory or common law principle
27  allowing for the recovery of fees or other expenses, including attorneys' fees, relating to any
28  claim or claims they are releasing in this Agreement. Id. ¶ II(C)(2).

THIERMAN LAW FIRM, PC
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbel.net www.laborlawyer.net

forms to all Class Members, certified the Settlement Classes for settlement purposes, confirmed Plaintiff as Class representative, confirmed Thierman Buck, LLP as Class Counsel, and confirmed CPT Group, Inc. as the Claims Administrator.  Id.

### B. Notice To The Class

The Notice process approved by the Court has been administered flawlessly by CPT. On October 29, 2015, Defendants' counsel provided the Claims Administrator with the last-known address and employment information of 180 Class Members.  See Hitomi Dec. at ¶ 5. After updating the addresses through the National Change of Address database (id. at ¶6), the Claims Administrator sent out the Court-approved Notice, Claim Form, and Request for Exclusion ("Notice Packet") via first class mail on November 20, 2015.  Id. at ¶ 7.  Thirty (30) Notice Packets were returned to the Claims Administrator's office by the Post Office.  Id. at ¶ 8. CPT performed a Skip Trace on all returned mail.  Id.   After performing the Skip Trace, 29 Notice Packet was re-mailed by CPT.  Id.   Ultimately, nine (9) Notice Packets were deemed undeliverable.  Id. at ¶ 10.

### C. Class Participation and Settlement Awards

CPT received no Requests for Exclusion. See Hitomi Dec. at ¶11.   There are no objectors.  See, e.g, Hitomi Dec. at ¶ 12; Buck Dec. at ¶ 11.  This positive response speaks to the fairness, reasonableness, and adequacy of the Settlement.  See Buck Dec. at ¶ 11.

The Net Settlement Amount which was available for distribution to all Class Members after all Court approved deductions was $355,000.  See Hitomi Dec. at ¶ 15.  The 81 claims represent an estimated claimed amount of $227,648.11, which is 64.83% of the Net Settlement Amount.  Id.  The average estimated settlement amount is $2,810.47.  Id. The highest estimated settlement amount being $4,683.07.  Id. The lowest estimated settlement is $136.52.  Id.

## V. THE SETTLEMENT SHOULD RECEIVE FINAL APPROVAL

The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation. See Churchill Village, L.L.C. v. GE, 361 F.3d 566, 576 (9th Cir. 2004) (noting

THERMAN LAW FIRM, PC
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net

"strong judicial policy" favoring settlements reached through arms-length, non-collusive negotiations); <u>Hanlon v. Chrysler Corp.</u>, 150 F.3d 1011, 1029 (9th Cir. 1998) (endorsing the trial court's "proper deference to the private consensual decision of the parties" when approving a settlement); <u>Franklin v. Kaypro</u>, 884 F.2d 1222, 1227 (9th Cir. 1989) ("Litigation settlements offer parties and their counsel relief from the burdens and uncertainties inherent in trial . . . [t]he economics of litigation are such that pretrial settlement may be more advantageous for both sides than expending the time and resources inevitably consumed in the trial process."); <u>see generally, Newberg On Class Actions</u> § 11.41 (4th ed. 2002) ("*Newberg*").

The standard for final approval is whether the Settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). A settlement is fair, reasonable, and adequate, and therefore merits final approval, when "the interests of the class are better served by the settlement than by further litigation." <u>Manual for Complex Litigation, Fourth</u> § 21.61 (Fed. Jud. Ctr. 2006) ("*Complex Manual*"). The Ninth Circuit has directed district courts to consider a variety of factors without providing an "exhaustive list" or suggesting which factors are most important. <u>See, e.g., Staton v. Boeing Co.</u>, 327 F.3d 938, 959 (9th Cir. 2003). These factors include: (1) the amount offered in the settlement, (2) the reaction of the class to the proposed settlement, (3) the strength of the plaintiffs' case balanced against the "risk, expense, complexity, and likely duration of further litigation" and the "risk of maintaining class action status throughout the trial," (4) the "extent of discovery completed" and the "stage of the proceedings," and (5) the informed views of experienced counsel. <u>See Hanlon</u>, 150 F.3d at 1026; <u>Staton</u>, 327 F.3d at 959.

These factors are not exclusive, and one factor may deserve more weight than the others depending on the circumstances. <u>Torrisi v. Tucson Elec. Power Co.</u>, 8 F.3d 1370, 1375 (9th Cir. 1993). In some instances, "one factor alone may prove determinative in finding sufficient grounds for court approval." <u>Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.</u>, 221 F.R.D. 523, 525-26 (C.D. Cal. 2004). "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of

relief sought, and the unique facts and circumstances presented by each individual case." Officers for Justice v. Civil Serv. Comm'n, 688 F.2d 615, 625 (9th Cir. 1982).

Due to the impossibility of predicting any litigation result with certainty, a district court's evaluation of a settlement essentially amounts to "nothing more than an amalgam of delicate balancing, gross approximations and rough justice." Id. at 625 (internal citations omitted). It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness. Id. at 628. Indeed, the Court's "role in intruding upon what is otherwise a private consensual agreement is limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or collusion between the negotiating parties, and that the settlement taken as a whole, is fair, reasonable and adequate to all concerned." Schiller v. David's Bridal, Inc., No 10-00616, 2012 WL 2117001, at *10 (E.D. Cal. June 11, 2012) (citing In re Imperial Corp of Am., 92 F.3d 1502, 1506 n.5 (9th Cir. 1996)).

### A.    The Settlement Is Presumed To Be Fair.

Significantly, "[a]n initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining." Newberg § 11.42 (4th ed. 2002). Such is the case here. Class Counsel engaged in extensive factual investigation (informally and through formal discovery) and participated in direct settlement discussions. See Buck Dec. at ¶¶ 7-8. Class Counsel are experienced in wage-and-hour litigation, and have obtained over half a billion dollars for class members since 1997. See Buck Dec. at ¶ 5. Finally, there are no objectors to the Settlement and no Class Members submitted Requests for Exclusion Forms. See Hitomi Dec. at ¶¶ 11-12. See also, Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1289 (9th Cir. 1992) (recognizing that fairness of a class action settlement may be inferred if few class members object to it). Accordingly, the Settlement should be presumed fair.

### B.    The Settlement Value Supports Final Approval.

The Settlement provides for a maximum settlement amount of $690,000.00, which represents a significant recovery by Plaintiffs and Class Members. This is not a settlement

THERMAN LAW FIRM, PC
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net

where the aggregate figure is large simply because the size of the class is in the tens or hundreds of thousands.  Instead, the class size here is relatively small but class members are eligible for significant financial benefit—an average payment of $2,810.47.  <u>See</u> Hitomi Dec. at ¶ 15.

    Given the significant legal uncertainty, and the real risk of receiving nothing at the end of the day, the $690,000.00 settlement represents a substantial recovery.  Although a larger award was theoretically possible by litigating this case to the end of trial, "the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes" in exchange for certainty and resolution.  <u>Linney v. Cellular Alaska P'ship,</u> 151 F.3d 1234, 1242 (9th Cir. 1998).

### C.    The Class Response Supports Final Approval.

    The Class Member participation rate of 45% is high.  The fact that no Class Members opted out and there are no objectors strongly favors final approval.  <u>See</u> <u>Nat'l Rural</u>, 221 F.R.D. at 529 ("It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of the proposed settlement action are favorable to the class members.")

### D.    The Risks of Continued Litigation Support Final Approval.

    Having engaged in meaningful discovery and significant discussions regarding their respective legal positions, both parties were able to assess the relative strengths and weaknesses of their claims and defenses.  Class Counsel are experienced class-action litigators, and understand that the outcome of class certification, trial, and any attendant appeals are inherently uncertain, as well as likely to consume many more months, even years.  <u>See</u> Buck Dec. at ¶ 12. Having reviewed relevant data and employment information, counsel for the parties arrived at a reasonable resolution through a protracted and arm's-length direct negotiation process, which continued into all details of the Settlement Agreement and ancillary documents. <u>Id</u>.

    In considering final approval, the Court should weigh the immediacy and certainty of substantial settlement proceeds against the risks inherent in continued litigation.  <u>See</u> <u>Complex Manual</u> § 21.62.  The trial of this action, were it to occur, could easily exceed one month in

THERMAN LAW FIRM, PC
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net

THERMAN LAW FIRM, PC
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net

length. Moreover, individual litigation would not be economical even for those with the finances, sophistication, and tenacity to secure legal representation and persevere through years of individual litigation. The parties' Settlement Agreement, on the other hand, provides immediate relief to all Class Members in a prompt and efficient manner and therefore is consistent with the "overriding public interest in settling and quieting litigation" that is "particularly true in class-action suits." Van Bronkhorst v. Safeco Corp., 529 F.2d 943, 950 (9th Cir. 1976).

### E. The Recommendation of Experienced Counsel Favors Final Approval.

"[P]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." In re Pacific Enterprises Securities Litigation, 47 F.3d 373, 378 (9th Cir. 1995). The "recommendations of plaintiffs' counsel should be given a presumption of reasonableness," particularly when counsel has significant litigation experience in similar cases. Boyd v. Bechtel Corp., 485 Supp. at 622; see also Ellis v. Naval Air Rework Facility, 87 F.R.D. 15, 18 (N.D. Cal 1980) ("[T]he fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight."). Hence, when evaluating a proposed settlement, a court—absent evidence of fraud, collusion, or the like—should be hesitant to substitute its own judgment for that of counsel. See Flinn v. FMC Corp., 528 F.2d 1169, 1173 (4th Cir. 1975).

Here Class Counsel, who have extensive experience prosecuting and litigating employment cases and complex class actions, and who conducted a legal and factual investigation into the claims in this case, and who have actively litigated this case for almost two years, firmly believe the proposed Settlement is fair, reasonable, adequate and in the best interest of all Class Members. See Buck Dec. at ¶ 12. Accordingly, this factor also weighs in favor of final approval.

### VI. THE CLASS REPRESENTATIVE PAYMENT SHOULD BE APPROVED

THERMAN LAW FIRM, PC
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbel.net www.laborlawyer.net

The Named Plaintiffs apply to the Court for a total of $84,000.00 in an enhancement payment for services rendered as representatives of the Class in prosecuting this Action[4], which is well within the range of reasonableness. *See* Ingram v. Coca-Cola Co., 200 F.R.D. 685, 694 (N.D. Ga. 2001) (approving incentive awards of $300,000 to each named plaintiff in recognition of services to class by responding to discovery, participating in mediation process and taking the risk of stepping forward); Van Vranken v. Atl. Richfield Co., 901 F. Supp. 294, 300 (N.D. Cal. 1995) (approving $50,000 participation award).

Here, the Named Plaintiffs provided invaluable assistance to Class Counsel in explaining Defendant's pay policies and procedures and also incurred personal risk in bringing this lawsuit on behalf of other persons in the Class. Id.  Plaintiffs could have been held responsible for Defendants' costs if they were unsuccessful.  Id.; see also Koehl v. Verio, 142 Cal. App. 4th 1313, 1328 (2006) (holding named plaintiffs in wage-and-hour class action liable, jointly and severally, for defendant's attorneys' fees where defendant prevailed at trial).

Such service payments are recognized as serving an important function in promoting class action settlements.  For example, in League of Martin v. City of Milwaukee, 588 F. Supp. 1004, 1024 (E.D. Wis. 1984), the court held that the proposed settlement properly granted the named plaintiff additional relief, explaining that it is "not uncommon for class members . . . to receive special treatment in settlement" when they have been instrumental in prosecuting the lawsuit. Given the Named Plaintiffs' active participation in this litigation, and their courage for asserting such an action despite the inherent risks involved in litigation and fear of reprisals, the requested Enhancement Payment is fair and well-deserved.   In addition, there have no objections by Class Members to the Enhancement Payment.  Accordingly, the Court should approve Plaintiffs' request.

---

[4] The Enhancement Payments are as follows: (1) $15,000 for Raymond Sullivan, (2) $15,000 for Julia Causey, (3) $15,000 for Blanca Aguilar, (4) $15,000 for Lamar Sherrod, and (5) $1,000 for *each* of the 24 opt-in plaintiffs who provided answers to written interrogatories. These Enhancement Payment are separate and apart from any other recovery to which the Named Plaintiffs may be entitled as Class Members under the Settlement. See Settlement Agreement at § B(5) and § A(14), respectively.

THERMAN LAW FIRM, PC
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net

1  **VII.    PLAINTIFF'S ATTORNEYS' FEES AND COSTS SHOULD BE APPROVED**

2

3          **A.    Class Counsel's Fee Award Is Properly Calculated as a Percentage of the Total Settlement Fund.**

4          The Federal Rules of Civil Procedure expressly authorize an award of reasonable

5  attorneys' fees and costs in a certified class action pursuant to the parties' agreement or to the

6  extent otherwise authorized by law.   Fed. R. Civ. P.  23(e).   The FLSA also provides for

7  attorneys' fees.  29 U.S.C. § 216(b).  Here, Class Counsel's fee request is 33% of the Maximum

8  Settlement.  The requested amount is less than the attorneys' fees Plaintiffs agreed to pay on a

9  contingency basis (35%), which is less still than the market rate of 40% to 50% in other

10  contingency cases.   Therefore, the requested amount is presumptively fair, reasonable, and

11  appropriate.

12          Under the "common fund" doctrine, "a litigant or a lawyer who recovers a common fund

13  for the benefit of persons other than himself or his client is entitled to a reasonable attorney's

14  fee from the fund as a whole."  Boeing Co. v. Van Gemert, 444 U.S. 472, 478 (1980).  The purpose

15  of the common fund approach is to "spread litigation costs proportionally among all the

16  beneficiaries so that the active beneficiary does not bear the entire burden alone."   Vincent v.

17  Hughes Air West, Inc., 557 F.2d 759, 769 (9th Cir. 1977).

18

19          In *Boeing*, the Supreme Court specifically addressed "whether a proportionate share of

20  the fees awarded to lawyers who represented the successful class may be assessed against the

21  unclaimed portion of the fund."  444 U.S. at 473.  The Supreme Court found the total amount of

22  the fund the proper denominator, approving fees of approximately $2,000,000.00 on a

23  settlement valued at $7,000,000.00 where claims totaled $706,600 of $1,544,300 in unconverted

24  debentures at issue, or 47% of the total.  The Court found that any latent reversionary right the

25  defendant possessed contingent on the failure of absentee class members to exercise their

26  present rights of possession did not defeat each class member's equitable obligation to share the

27  expenses of the litigation.  Id. at 481-82.

28

1   Moreover, in <u>Williams v. MGM-Pathe Communications Co.</u>, 129 F.3d 1026 (9th Cir.

2   1997), the gross settlement fund was valued at $4.5 million, the parties agreed to 33⅓% of the

3   total value for attorneys' fees, and the amount of the claims totaled just $10,000.  The district

4   court assessed the attorneys' fees as 33⅓% of the $10,000 amount claimed.  The Ninth Circuit

5   reversed, finding that the fee award should have been based on 33⅓% as agreed by the parties

6   based on the total recovery value of $4.5 million:  "[T]he court abused its discretion by basing

7   the fee on the class members' claims against the fund rather than on a percentage of the entire

8   fund . . . ." <u>Williams</u>, 129 F.3d at 1027.

9   Under these principles, a percentage of the common fund fee award is properly based on

10   the total settlement value of $690,000 in this case.  Class Counsel's request for approximately

11   33% of this amount ($230,000) is fair compensation for undertaking complex, risky, expensive,

12   time-consuming, and prolonged litigation solely on a contingency basis.  <u>See</u> Buck Dec. at ¶ 15.

13   The request is in line with attorneys' fees awards in other wage-and-hour class actions (<u>e.g.</u>,

14   <u>Barbosa v. Cargill Meat Solutions Corp.</u>, 297 F.R.D. 431, 450-51 (E.D. Cal. 2013) (gathering

15   cases and awarding 33% of total settlement amount), especially since a significant portion of the

16   Class Members will be receiving substantial settlement payments averaging $2,810.47. <u>See</u>

17   Hitomi Dec. at ¶ 15.

18   

19   Courts have historically awarded percentage fees in the range of 20% to 50% of the

20   common fund, depending on the circumstances of the case.  <u>Newberg</u> § 14:6 (4th ed. 2008).

21   "No general rule can be articulated on what is a reasonable percentage of a common fund.

22   Usually 50% of the fund is the upper limit on a reasonable fee award from a common fund in

23   order to assure that the fees do not consume a disproportionate part of the recovery obtained for

24   the class, although somewhat larger percentages are not unprecedented." <u>Id</u>.  Here, the Class

25   Notice plainly disclosed that $230,000 (or 33%) of the Settlement would be allocated to pay

26   attorneys' fees.  The fact that no Class Member objected to the Settlement in general, or the

27   attorneys' fees specifically, is an overwhelming indication that the attorneys' fees and costs

28   

THERMAN LAW FIRM, PC
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net

1    sought here are fair, reasonable, and appropriate.  Accordingly, Class Counsel's attorneys' fee

2    award should be approved.

3              **B.       Class Counsel's Costs and Expenses Should Be Approved.**

4              In the course of this litigation, Plaintiffs' counsel incurred out-of-pocket costs and

5    expenses in excess of the $15,000.00 agreed upon in the Settlement.  Furthermore, the Class

6    Notice plainly disclosed that up to $15,000.00 would be allocated to pay litigation costs

7    advanced by Class Counsel.    Accordingly, the Court should approve Plaintiffs' costs and

8    expenses.

9    **VIII.   FINAL CLASS CERTIFICATION SHOULD ALSO BE GRANTED.**

10             No Class Member has objected to class certification or to the appointment of Named

11   Plaintiffs as Class representatives or to the appointment of Class Counsel.  Accordingly, the

12   Court should grant final certification of the Settlement Classes as defined in the Settlement.

13   / / /

14   / / /

15   / / /

16   / / /

17   / / /

18   / / /

19   / / /

20   / / /

21   / / /

22   / / /

23   / / /

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

THIERMAN LAW FIRM, PC
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net

PLAINTIFFS' MOTION ISO FINAL APPROVAL OF COLLECTIVE AND CLASS ACTION SETTLEMENT

IX.     **CONCLUSION.**

For all these reasons, and based on the information provided, Plaintiffs respectfully ask the Court to enter the proposed Order of Final Approval and Judgment submitted contemporaneously with this Motion.

Dated: January 6, 2016.                          **THIERMAN BUCK, LLP**


*/s/       Joshua D. Buck*
Mark R. Thierman, Esq., Nev. Bar No. 8285
Joshua D. Buck, Esq., Nev. Bar No. 12187
Leah L. Jones, Esq. Nev. Bar No. 13161
7287 Lakeside Drive
Reno, Nevada 89511

*Attorneys for Plaintiffs*

**THIERMAN LAW FIRM, PC**
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net

PLAINTIFFS' MOTION ISO FINAL APPROVAL OF COLLECTIVE AND CLASS ACTION SETTLEMENT